UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **GENE VISCO,** | ) <br> ) Case No.: <br> ) |
| Plaintiff, | ) 1:20-cv-12303-JCB <br> ) |
| v. | ) <br> ) |
| **CREDITORS RELIEF, LLC,** | ) <br> ) |
| Defendant. | ) <br> ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff, Gene Visco ("Plaintiff" or "Mr. Visco") by and through his counsel, KIMMEL & SILVERMAN, P.C., and hereby submits this Memorandum in Law in Opposition to the Motion to Dismiss filed by Defendant, Creditors Relief, LLC ("Defendant" or "Creditors Relief").

**I.    STATEMENT OF FACT**

Mr. Visco is a resident of Burlington, Massachusetts. See Docket Entry 16, Amended Complaint ¶ 6. He has a cellular telephone number that begins with a "617" area code and ends in "5087." See Id. ¶ 10. In order to obtain solitude from unwanted solicitation calls, Mr. Visco registered the number ending in 5087 on the federal Do Not Call Registry in or around 2003. See Id. ¶13. However, despite placing his number on the Do Not Call Registry, Defendant placed a series of unwanted solicitation calls and texts to Plaintiff's cell phone from March 2020 through November 2020 regarding its debt relief services. See Id. ¶¶ 15, 16. Plaintiff attached screenshots of these communications to his Amended Complaint as Exhibit "A." See Id.

Plaintiff did not consent to these communications and was not interested in debt relief services from Defendant. See Id. ¶¶ 14, 17.

The communications from Defendant were sent via an automated telephone dialing system. See Id. ¶22. The text messages Plaintiff received were generic, pre-scripted messages. See Id. ¶ 19. The telephone calls Defendant placed either began with a pre-recorded/automated message or a noticeable pause or delay before a live agent came on the line. See Id. ¶¶ 20, 21. While Plaintiff has not yet had the benefit of discovery, the nature of the text messages and the calls have lead Plaintiff to reasonably infer that Defendant utilized an automatic telephone dialing system. See Id. ¶¶ 19-22. These communications were bothersome, disruptive and frustrating for Plaintiff to endure and caused a sense of invasion of privacy. See Id. ¶18.

Plaintiff filed a Complaint on December 31, 2021 alleging violations of Sections §§227(b) and §§ 227(C) of the Telephone Consumer Practices Act ("TCPA"). See Docket Entry 1. On June 1, 2021, Defendant filed a Motion to Dismiss arguing Plaintiff failed to allege whether Defendant called or texted him; failed to include a telephone number, dates/times of calls, number of calls; that Plaintiff did not plead sufficiently that Defendant used an ATDS; and that Plaintiff did not allege sufficiently that the calls were telephone solicitations. See Docket Entry 11. On June 15, 2021, Plaintiff filed his first Amended Complaint, which included additional facts to address the alleged deficiencies. See Docket Entry 16.

The Amended Complaint also alleges violations of subsections 227(b) and 227(c) of the TCPA. See Id. However, Plaintiff included additional facts to address each point raised by Defendant in its initial Motion to Dismiss. Specifically, Plaintiff alleged that Defendant called and texted him; included a date range for calls, as well as, attached screenshots of the communications; added the first three and last four digits of the phone number Defendant called

and texted; noted the calls were solicitation calls related to debt relief services; and included several facts related to the automated nature of the communications.

Despite the inclusion of these very specific facts giving rise to Plaintiff's allegations in this matter, Defendant filed a Motion to Dismiss Plaintiff's first Amended Complaint on June 29, 2021. See Docket Entry 18. Defendant again alleges that Plaintiff has not set forth sufficient facts. Specifically, Defendant alleges that Plaintiff has failed to set forth sufficient facts that the calls/texts in the screenshots were from Defendant; that Plaintiff does not allege sufficient facts showing an ATDS was used; and that Plaintiff did not sufficiently plead that the communications were telephone solicitations. See Id. Finally, Defendant argues that Plaintiff does not have standing. See Id. Defendant also requests discovery be stayed. See Id.

## II.    ARGUMENT

### A. Legal Standard

1. Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the Plaintiff has failed to state a claim for which relief can be granted. A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. Moore v Baylor Health Care System, Inc., 2004 U.S. Dist. LEXIS 7009. Under Rule 12(b)(6) a dismissal is appropriate only when the facts alleged, taken as true, do not justify recovery for the plaintiff. Dr. Roberto Vizcarrondo v Board of Trustees of the University of Puerto Rico, et al., 1397 Supp. 2d 198 (2001). The First Circuit held that a Court must "affirm a dismissal for failure to state a claim only if it clearly appears that on the facts alleged, the plaintiff cannot recover on any viable theory..." See Id., quoting Wagner v Devine 1227 3d. 53 (1 Cir. 1997). In Butland v New Hampshire st Department of Corrections, 229 F. Supp. 2d 75 (2002), the Court stated that: "[t]he

issue is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits". Furthermore in the case of Dr. Roberto Vizcarrondo v Board of Trustees of the University of Puerto Rico, et al, the Court held: "in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief."

Just a few years before the United States First Circuit Court of Appeals, in the case of Herbert G. Benegin v Regency Savings Bank, 234 F. 3d 68 (2000), quoting from Connecticut Gen. Life Ins Co v Universal Ins. Co., 838 7.2d 612, 622 (1 Cir 1988) and Sckott Motorcycle Supply, Inc v American Honda Motor Co., 976 F2d. 58, 62 (1st Cir., 1992) said that a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief but it is not necessary to set out the legal theory on which the claim is based and that Rule 8 of the Federal Rules of Civil Procedure does not require a party to specify its legal theory of recovery so long as the complaint implicates the relevant issues

2. Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms: "facial attacks" and "factual attacks." See Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 29 Fed.R. Serv.2d 512 (5 Cir.1980), reh'g denied, 5 Cir. 1980) 622 F.2d 1043, cert. denied, 449 U.S. 953, 66 L.Ed.2d 217, 101 S.Ct. 358 (U.S.1980); United States v. Ritchie, 15 F.3d 592 (6th Cir.1994), reh'g en banc denied, (6 Cir. 1994), cert. denied, 513 U.S. 868 130 L.Ed.2d 212, 115 th S.Ct. 188 (U.S.1994); Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573 (Fed.Cir. 1993), cert. denied, 512 U.S. 1235, 129 L.Ed.2d 859 114 S.Ct. 2738 (U.S.1994); R.B. McMaster v.

United States, 177 F.3d 936, 940 (11 Cir. 1999); Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11 th th Cir.1990); Mortensen v. First. Fed. Sav. & Loan Assoc., 549 F.2d 884, 22 Fed.R.Serv.2d 1089 (3 Cir.1977); Gould v. Elecs., Inc. v. United States, 220 F.3d 169 (3 Cir.2000).

"Facial attacks" on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. See Menchaca, 613 F.2d at 511; Mortensen, 549 F.2d at 891; Dunbar, 919 F.2d 1528-1529. A facial attack is an attack on the adequacy of the complaint to allege a basis of federal subject-matter jurisdiction. McMaster, 177 F.3d at 940. The nonmovant is entitled to safeguards similar to those available in opposing a Rule 12(b)(6) motion. See Williamson v. Tucker, 645 F.2d 404, 412; 32 Fed.R.Serv.2d 361 (5 Cir.1981), cert. denied, th 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981); Dunbar, 919 F.2d at 1529. The reviewing court must take all of the allegations in the complaint as true. See Id.; see also, Murphy v. United States, 45 F.3d 550, 220 (1 Cir. 1995).

"Factual attacks," on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. See Menchaca, 613 F.2d at 511; Mortensen, 549 F.2d at 891; Dunbar, 919 F.2d 1528-1529; Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1 Cir.1992); Media st Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228 (1 Cir.1991). The non-movant does not enjoy the same safeguards as in the case of a facial attack. See Menchaca, 613 F.2d at 511; Mortensen, 549 F.2d at 891; Dunbar, 919 F.2d 1528-1529. The reviewing court does not presume the truthfulness of the plaintiff's allegations in the complaint. See Id.  The reviewing court also is not required to view all of the record evidence in the light most favorable to the non-

movant. See Id. Instead, the court is free to review the evidence and satisfy itself as to its power to hear the case. See Id.

Defendant appears to allege a "facial attack" as it asserts even accepting Plaintiff's claims as true, his allegations "cannot support the inference of actual, concrete of particularized injury to the Plaintiff, as required for Article III standing." See Docket Entry 18, p. 8

### B. The Amended Complaint States a Plausible Claim Under 227(b) of the TCPA

Defendant argues the factual allegations in the first Amended Complaint are inadequate as Plaintiff has failed to allege the telephone numbers are Defendant's telephone numbers or that Defendant used an automated telephone dialing system when calling or texting him. See Docket Entry 18. Defendant argues the text messages in question could not have been sent via an ATDS because they include typographical errors and were too close in time to a particular telephone call. See Id. Defendant provides examples of situations it believes would demonstrate an ATDS was used including lack of human response when attempting to have a conversation and generic content of messages. See Id. Defendant asks in the alternative that Plaintiff be required to plead additional facts supporting why Plaintiff believes these numbers belong to Defendant and the use of an automated telephone dialing system. See Id.

Defendant's argument ignores the plain language of section 227(b) of the TCPA, which prohibits not just calls using an automated telephone dialing system, but also calls initiated using an "artificial or recorded voice." Even if Plaintiff did not allege sufficient facts regarding the use of an automated telephone dialing system, which Plaintiff does not concede, Plaintiff has alleged sufficient facts that Defendant placed calls and texts to him using a pre-recorded message. See Docket Entry 16, ¶¶19-20.

Defendant also seems to have overlooked several paragraphs of Plaintiff's first Amended Complaint. Mr. Visco was the recipient of these communications and states in paragraph 15 of his Amended Complaint that the communications he received were from Defendant. See Docket Entry 16. The screenshots from Mr. Visco's phone were attached as Exhibit "A." One of the text messages received by Plaintiff specifically identifies Defendant's name in an email address. See Id. Defendant also fails to recognize that a violation of section 227(b) arises not Plaintiff also sets forth specific reasons as to how he knew the communications were placed using an automated telephone dialing system including: being greeted by an automated/pre-recorded voice, hearing a noticeable pause when answering a call before a live agent came on the line, and the receipt of generic text messages. See Docket Entry 16. Interestingly, two out of the three of these were specific examples that Defendant indicated would be sufficient to establish that an ATDS was used.

Plaintiff has done more than provide a short and plain statement of the facts giving rise to his claim, he has provided Defendant with screenshots of the actual communications he received, including telephone numbers placing the communications, and dates and times of those communications. Plaintiff has also provided the generic text messages he received. Defendant is asking that Plaintiff prove his case at the pleading stage when all Plaintiff is required to do is set forth a short and plain statement of his facts giving rise to a claim. **Plaintiff has done just that.**

For the reasons stated herein, the Amended Complaint states a plausible claim under section 227(b) of the TCPA and Defendant's motion to dismiss must therefore be denied.

### C. The Amended Complaint States a Plausible Claim Under 227(c) of the TCPA

Defendant next argues that Plaintiff does not allege that Defendant placed "telephone solicitations" to him. See Docket Entry 18. Defendant indicates that "[n]othing in the Amended

Complaint gives rise to an inference that the message or call constituted telephone solicitation." See Id. This is inaccurate.

In his Amended Complaint, Plaintiff specifically stated that Defendant placed a series of unwanted "solicitation calls and texts" to his cellular telephone. See Docket Entry 16. ¶ 15. Plaintiff further alleged in his Amended Complaint that Defendant was "soliciting its debt relief services." See Id. ¶ 16. The text messages he received from 201-308-1456 support this assertion as well. See Docket Entry 16, Ex. A. The text message received on May 31, 2020 clearly indicates that the text message was from Defendant as an email address including Defendant's name is included. See Id. The text message received from this number on March 11, 2020 indicates that Defendant offers services to "resolve any debts[.]" See Id. The text message on May 28, 2020 indicates Defendant can "help reduc[e] … merchant cash advance payments." See Id. On May 31, 2020 the text indicates Defendant can "help … reduce and modify [business debt] accounts." See Id. Each text solicits Defendant's services to help reduce debt.

For the reasons stated herein, the Amended Complaint states a plausible claim under section 227(c) of the TCPA and Defendant's motion to dismiss must therefore be denied.

**D. The Amended Complaint Alleges an Injury-In-Fact.**

"Article III of the United States Constitution limits the power of the courts to the resolution of actual 'Cases' and 'Controversies'." Ass'n of Pub. Agency Customers v. Bonneville Power Admin., 733 F.3d 939, 969 (9th Cir. 2013). "The irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The first element—and the one at issue here—is that Plaintiff must have suffered "an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical". Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

180-81 (2000).  Although Defendant relies heavily on Spokeo, it did not revolutionize the injury-in-fact test, but merely reiterated that showing standing requires a plaintiff to allege harms that are both concrete and particularized—it neither overruled precedent nor made new law.  See Spokeo v. Robins, 136 S. Ct. 1540 (May 16, 2016).

The Court in Spokeo issued a reminder of general, previously-established Article III standing principles. In discussing concrete injuries, the Court stated that "[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." Spokeo, 136 U.S. at 549 (citing Pleasant Grove City v. Summum, 555 U.S. 460, 129 S.Ct. 1125, 172 L.Ed.2d 853 (2009) (free speech); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (free exercise)). The Court stated that:

> in determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775–777, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." 504 U.S., at 578, 112 S.Ct. 2130.

Spokeo, 136 U.S. at 549.

Mr. Visco has sufficiently alleged concrete injuries in this matter.  While the Amended Complaint indeed sets forth facts to show specific harms, the truth is that such allegations are not required: violations of the TCPA have been routinely recognized as concrete harms. Judge Kennelly of the Northern District of Illinois explained in Aranda v. Caribbean Cruise Line, Inc.:

The Supreme Court's point in *Spokeo* was not that a statutory violation cannot constitute a concrete injury, but rather that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated. Failure to ensure the accuracy of a consumer report may result in a harm or material risk of harm the FCRA was intended to curb—loss of employment opportunities, for example, or a decrease in the consumer's creditworthiness. But it may also fail to cause any harm or material risk of harm at all. Put differently, the procedural rights imposed through section 1681e(b) are attenuated enough from the interests Congress identified and sought to protect through the FCRA that charging a defendant with violating them is not necessarily the same as charging the defendant with causing a congressionally identified concrete injury that gives rise to standing to sue.

The same cannot be said of the TCPA claims asserted in this case. Unlike the statute at issue in *Spokeo* (and those at issue in *Smith, Gubala, and Khan*), the TCPA section at issue does not require the adoption of procedures to decrease congressionally-identified risks. Rather, section 227 of the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent. It directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA. There is no gap— there are not some kinds of violations of section 227 that do not result in the harm Congress intended to curb, namely, the receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.

In any event, section 227 establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, de facto injury. As other courts have observed, American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively directed their conduct at plaintiffs to invade their privacy and disturb their solitude. *See, e.g., Mey v. Got Warranty, Inc.,* No. 5:15 C 101, 2016 WL 3645195, at *3 (N.D.W.V. June 30, 2016) ("[T]he TCPA can be seen as merely liberalizing and codifying the application of [a] common law tort to a particularly intrusive type of unwanted telephone call."); *Caudill v. Wells Fargo Home Mort., Inc.,* No. 5:16-066-DCR, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) ("[The] alleged harms, such as invasion of privacy, have traditionally been regarded as providing a basis for a lawsuit in the United States."). And Congress enacted the TCPA to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion.

…

In contrast to statutes that impose obligations regarding how one manages data, keeps records, or verifies information, section 227 of the TCPA directly prohibits a person from taking actions directed at consumers who will be actively touched by that person's

conduct. It does not matter whether plaintiffs lack additional tangible harms like loss of cell phone battery life, actual annoyance, and financial losses; Congress has identified that such unsolicited telephonic contact constitutes an intangible, concrete harm, and plaintiffs have alleged such concrete harms that they, themselves suffered. Their injuries are concrete and particularized, traceable to defendants' conduct, and judicially redressable. For these reasons, the Court overrules defendants' argument for summary judgment based on plaintiffs' purported lack of standing.

See Aranda v. Caribbean Cruise Line, Inc., 2016 WL 4439935, at *5–6 (N.D. Ill. Aug. 23, 2016) (Emphasis added.); see also Krakauer v. Dish Network L.L.C., No. 1:14-CV-333, 2016 WL 4272367, at *2 (M.D.N.C. Aug. 5, 2016) ("Telemarketing calls made in violation of the…[TCPA] are more than bare procedural violations...Post-Spokeo cases have consistently concluded that calls that violate the TCPA establish concrete injuries."); Rogers v. Capital One Bank (USA), N.A., No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) ("As the Eleventh Circuit has held, a violation of the TCPA is a concrete injury.").

Hence, unsolicited phone calls and text messages are sufficiently concrete to satisfy the injury-in-fact requirement of Article III. Further, Mr. Visco has alleged that the calls were "bothersome, disruptive and frustrating" and an "invasion of privacy." See Docket Entry 16, ¶18. As such, the Court should find Mr. Visco's allegations that such calls and texts were placed to him sufficient to ensure a case or controversy exists for the Court to adjudicate.

### E. Plaintiff does not opposed a stay of discovery.

Plaintiff does not oppose Defendant's request to stay discovery pending determination of Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Gene Visco respectfully requests this Honorable Court deny Defendant Creditors Relief's Motion to Dismiss in its entirety. In the alternative,

Plaintiff would request an opportunity to amend to correct any deficiencies the Court identifies as remaining in Plaintiff's Amended Complaint.


DATED: 07/13/2021

                                        /s/ Craig Thor Kimmel
                                        CRAIG THOR KIMMEL, ESQUIRE
                                        Kimmel & Silverman, P.C.
                                        30 E. Butler Pike
                                        Ambler, PA 19002
                                        Phone: (215) 540-8888
                                        Fax: (877) 788-2864
                                        Email: teamkimmel@creditlaw.com

## CERTIFICATE OF SERVICE

I, Craig T. Kimmel hereby certify that a true and correct copy of the foregoing Amended Complaint has been served on all parties via ECF on July 13, 2021.

*/s/ Craig T. Kimmel*